# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**EDGEL B. JARRETT, JR.**

    **Plaintiff,**

**vs.**                                                    **CIVIL ACTION NO. 2:20-CV-00679**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered October 14, 2020 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 15, 17)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for entry of an award for benefits or for remand (ECF No. 15); **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 17); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Edgel B. Jarrett, Jr. (hereinafter referred to as "Claimant"), protectively filed his applications on February 20, 2018 (Tr. at 202) alleging disability since May 23, 2013[1] because of severe lower back pain, diabetes, and obesity (Tr. at 15, 202, 232). His claims were initially denied on April 24, 2018 (Tr. at 117-121, 122-126) and again upon reconsideration on June 12, 2018 (Tr. at 115, 116, 130-132). Thereafter, Claimant filed a written request for hearing on August 7, 2018 (Tr. at 135-136).

An administrative hearing was held on September 20, 2019 before the Honorable Toby J. Buel, Sr., Administrative Law Judge ("ALJ") (Tr. at 32-66). On October 1, 2019, the ALJ entered an unfavorable decision (Tr. at 12-31). On December 2, 2019, Claimant sought review by the Appeals Council of the ALJ's decision (Tr. at 195-201). The ALJ's decision became the final decision of the Commissioner on August 10, 2020 when the Appeals Council denied Claimant's Request for Review (Tr. at 1-6).

On October 13, 2020, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 12, 13) Subsequently, Claimant filed a Brief in Support of Judgment on the Pleadings (ECF No. 15), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 17), and then Claimant filed his Reply (ECF No. 18). Consequently, this matter is fully briefed and ready for resolution.

---

[1] Claimant alleged he stopped working on May 23, 2013 "[b]ecause of other reasons", explaining that he was "[w]rongfully terminated but was going to have to quit because of severe pain." (Tr. at 232; see also Tr. at 47-48) Claimant subsequently amended his onset date to July 13, 2015 (Tr. at 39, 303).

**Claimant's Background**

Claimant was considered a "younger person" on the alleged onset date and throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 67, 79) Claimant graduated high school and obtained additional training in auto technology. (Tr. at 233) Claimant last worked in retail as a sporting goods sales associate. (Id.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. §§ 404.1520, 416.920.  If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

3

The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

**<u>Summary of ALJ's Decision</u>**

In this case, the ALJ found Claimant met the insured status requirements through December 31, 2018. (Tr. at 17, Finding No. 1) At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of May 23, 2013. (<u>Id</u>., Finding No. 2) At the second inquiry, the ALJ found that Claimant had the following severe impairments: spine dysfunction; thyroid disorder; diabetes mellitus; and obesity. (<u>Id</u>., Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform sedentary work except:

> He can lift ten pounds occasionally and less than ten pounds frequently. He can sit for six hours total in an 8-hour workday and stand and/or walk for two hours total in an 8-hour workday. He can sit for one hour at a time, stand for fifteen minutes at a time, and walk for fifteen minutes at a time. He needs a 5-minute break after each defined period, and can remain on-task at the workstation. He can operate foot controls on an occasional basis. He can occasionally climb ramps and stairs; but never climb ladders, ropes, or scaffolds. He can occasionally stoop and crouch, but can never balance, kneel, or crawl. He can tolerate frequent exposure to hot and cold temperature extremes, pulmonary irritants, wetness, and humidity; but must

4

avoid all exposure to heights, moving machinery, hazards or vibration. The individual would be afflicted with chronic pain noticeable to himself at all times, but could maintain attention and concentration in two hours increments, with normal morning, lunch, and afternoon breaks.

(Tr. at 19, Finding No. 5) At step four, the ALJ found Claimant was not capable of performing any of past relevant work. (Tr. at 24, Finding No. 6) However, in addition to the immateriality of the transferability of job skills, based on Claimant's age, education, work experience, and RFC, the ALJ determined that Claimant is capable of performing other jobs that exist in significant numbers in the national economy. (Tr. at 25, Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability since May 23, 2013 through the date of the decision. (Tr. at 26, Finding No. 11)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ's decision is not supported by substantial evidence because he failed to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") because the optical assembler and grader sorter jobs did not meet the requirements under the ALJ's hypothetical, and the ALJ failed to ask the vocational expert if his testimony was consistent with the DOT (ECF No. 15 at 9-14). Claimant also asserts that the ALJ's RFC is flawed to the extent that it fails to define "balance", therefore his reliance on the vocational expert's testimony and the jobs returned to determine Claimant's capacity for work lacks substantial evidence because limiting him to no balancing would erode the sedentary job base (Id. at 14-17). Finally, Claimant contends that the RFC assessment is flawed because the ALJ evaluation of Claimant's symptoms is conclusory, internally inconsistent and overinflates Claimant's abilities (Id. at 17-20). Claimant asks for reversal or remand. (Id. at 20)

In response, the Commissioner contends that while there is a conflict between the DOT

and the vocational expert's testimony regarding the optical assembler and sorter/grader jobs, the ALJ satisfied his duty at step five by finding Claimant remained capable of performing the work of an order clerk, to which Claimant raises no objection. (ECF No. 17 at 7-9) To remand would serve no purpose given this harmless error, as the result would be the same. (Id. at 9) Additionally, the Commissioner contends that the RFC assessment is supported by substantial evidence and sufficiently accounts for Claimant's established limitations; the ALJ examined the relevant records and determined Claimant's impairments were not disabling – Claimant fails to prove any greater functional limitations not accounted for in the RFC. (Id. at 9-13) With respect to the restriction to no balancing, no further explanation is warranted. (Id. at 13) To the extent Claimant contends the RFC is flawed because of his use of a walker, the ALJ properly scoured the record and determined that an assistive ambulatory device was not medically required, and that Claimant demonstrated normal gait and did not require such aids during consultations. (Id. at 13-15) Moreover, the ALJ thoroughly considered Claimant's subjective complaints in accordance with the pertinent legal authority and gave them credit by reducing both exertional and non-exertional tasks in the RFC. (Id. at 16-19) Finally, the Commissioner contends that substantial evidence supported the ALJ's decision and asks this Court to affirm. (Id. at 20)

In reply, Claimant emphasizes that not only did the ALJ fail to identify and resolve the conflicts between the VE's testimony and the DOT, two of the jobs identified by the VE represent a conflict between the DOT and the controlling RFC, therefore, the ALJ's reliance on the remaining job identified, order clerk, is suspect, corrupting the entire opinion. (ECF No. 18 at 1-2) Claimant also points to a recent decision, Abernathy v. Saul, 2021 WL 1734353 (W.D.N.C. May 3, 2021), wherein the court questioned whether the job of a sorter, one of the jobs identified

by the VE that Claimant could still perform, was obsolete – this also represents a clear conflict between the VE's testimony and the DOT, further undermining the ALJ's findings. (Id. at 3-4) Claimant further asserts that the sorter job involves moving machinery, a conveyor belt, which underscores the VE's unfamiliarity with the job's work setting characteristics, including the optical assembler job. (Id. at 4-5) This runs afoul of the SSA's own Vocational Expert Handbook, which requires such experts to be familiar with – since the VE's testimony has been shown to be unreliable, the ALJ's fifth step determination is not supported by substantial evidence. (Id. at 5-6)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Relevant Medical Evidence:

On January 13, 2014, Claimant established care with Nikki E. Bailes, FNP-BC, for complaints of low back pain for the past two years following an injury at work (Tr. at 721-724). On exam, tenderness was noted in the lumbosacral spine (Tr. at 723). X-rays of the lumbar spine revealed no significant abnormality. (Tr. at 307) At a follow-up appointment, Claimant was sent to obtain an MRI for his lumbar spine and given a referral for physical therapy. (Tr. at 719). Claimant began physical therapy on February 4, 2014 and continued through April 18, 2014, participating in regular at least bi-weekly therapy sessions. (Tr. at 309-354). On exam at his first physical therapy session, he had 1+ ankle and knee jerks bilaterally, limited range of motion of the lumbar spine, an increased lumbar lordosis, increases thoracic kyphosis, and positive straight leg raises on the right and left (Tr. at 309-312).

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Claimant continued to visit his primary care provider in May 2014, January 5, 2015, and on April 6, 2015, with continued complaints of low back pain; tenderness was noted upon palpation of the lumbosacral spine, limited range of motion due to pain, and by April 2015, Claimant exhibited positive straight leg raises on the right and left, muscle spasms, and abnormal motion of the lumbosacral spine. (Tr. at 689-693, 677-683, and 671-676). Treatment courses included injections of Toradol, Naproxen, steroids, and anti-inflammatory medication to manage his symptoms (Id.). In July 2015, Claimant underwent another MRI study of his lumbar spine revealing a L5-S1 disk protrusion with distal shallow right larger than the prior study in April 2014 and facet arthropathy at multiple levels which is mild. (Tr. at 449-450)

On September 30, 2015, during a follow up appointment with Kara Holdren, APRN-FNP-BC, Claimant's gait and stance were noted to be abnormal, slow and limping. (Tr. at 446) He reported that he saw a social security physician who recommended Claimant use a walker for ambulation, accordingly, Ms. Holdren prescribed a walker. (Tr. at 442, 447) Claimant continued to see Ms. Holdren every three months and due to his continued back pain and continued lumbosacral muscle spasms, tenderness and positive straight leg raises on the right and left, an x-ray of the lumbar spine is ordered. (Tr. at 594-595). No acute changes in his x-rays were noted. (Tr. at 580)

On June 26, 2017, Claimant began physical therapy. (Tr. at 368-373) At his initial assessment for therapy, his gait was noted to be antalgic and described as a decreased weight shift to the left lower extremity and tenderness was noted to the right and left posterior greater trochanters, along the course of the piriformis, and to the left and right greater sciatic foramen. (Tr. at 369, 370) The assessor noted that signs and symptoms appear to correlate greatest with LV5-

SV-1 progressively increasing discal protrusion, somewhat   greater towards left side than right, with accompanying S1 radicular pain. (Tr. at 370) After nine therapy sessions, treatment records indicated that Claimant's symptoms had centralized to the lumbar region, without increased symptoms, although his range of motion and strength remained the same since his initial assessment. (Tr. at 388-391)

An MRI of Claimant's lumbar spine from September 18, 2017 revealed desiccation of the L5-S1 disc as noted with the prior study and "[c]urrently, no evidence of disc protrusion is identified. Significant improvement in appearance of the lumbar spine at this level. The remainder of the lumbar levels are unchanged." (Tr. at 987)

On September 26, 2018, Claimant returned to Ms. Holdren again for complaints of chronic back pain. (Tr. at 885-892) She noted that Claimant had physical therapy and his last MRI showed significant improvement and resolution of his disk problems, but he continued to report worsening pain and difficulty even completing his ADLs, sitting, standing, and even ambulating. (Tr. at 885) She had referred Claimant to the Pain Center in Morgantown, but he did not want to have injections. (Id.)  She noted Claimant's gait and stance was abnormal and he was walking with a limping gait. (Tr. at 889) She referred Claimant to the Cowen Pain Clinic. (Tr. at 891)

On April 24, 2019, Claimant underwent an EMG study to evaluate for peripheral polyneuropathy versus lumbosacral radiculopathy due to his complaints of low back pain radiating down both legs with occasional numbness; the results were normal. (Tr. at 1017-1020) An MRI from July 15, 2019 revealed mild narrowing of the L5-S1 disc space; mild right neuroforaminal narrowing; no significant canal stenosis; and central/right foraminal disc protrusion at L5-S1 resulting in mild right neuroforaminal narrowing. (Tr. at 997-1000) On August 7, 2019 Claimant

was seen by Russell Biundo, M.D., in connection with his back pain; Dr. Biundo noted Claimant reported using a walker, but not a cane or wheelchair; Dr. Biundo observed Claimant was not in acute distress; had normal muscle tone in both upper and lower extremities; had a wide-based antalgic gait; tenderness in the L5-S1 region with normal range of extension, rotation, and lateral bending but a limited flexion (Tr. at 1005-1006). Dr. Biundo assessed degenerative disc disease of the lumbar spine with lumbar facet arthropathy and referred Claimant for physical therapy after discussing conservative treatments. (Tr. at 1007)

Consultative Examinations:

On September 16, 2015, Claimant was examined by Arturo Sabio, M.D., on behalf of the Agency (Tr. at 355-360) Dr. Sabio observed Claimant walks with a normal gait and does not require ambulatory aids and is stable at station. (Tr. at 356) Dr. Sabio noted tenderness over the spinous processes of the lumbar spine, positive straight leg raises bilaterally at 70 degrees, restricted by pain in the lumbar spine, and limited lumbar flexion, forward flexion, and lateral flexion. (Tr. at 357). Dr. Sabio rated Claimant's muscle strength as 5/5 bilaterally in both upper and lower extremities, no evidence of atrophy, and well preserved sensory modalities; limited flexion and extension of the hips, as well as limited knee flexion and extension, and limited ankle range of motion due to obesity. (Id.) Claimant was able to walk on the heels, toes, and heel-to-toe and tandem, stand on either leg separately, and was able to squat fully. (Id.) Dr. Sabio assessed Claimant with diabetes mellitus type 2, degenerative arthritis of the lumbar spine, and morbid obesity (Id.).

On March 15, 2017, Stephen Nutter, M.D., examined Claimant on behalf of the Agency (Tr. at 361-367). Dr. Nutter observed a normal gait and noted Claimant was comfortable in the

siting position, but noticeably uncomfortable in the supine position. (Tr. at 362) Dr. Nutter found +1/2 to +1 pitting edema on the bilateral lower extremities and limited range of motion of the knee due to obesity. (Tr. at 363) On further exam, the following are noted: tenderness to paraspinal muscles and processes, pain with range of motion testing of the lumbar spine, a limited straight leg raise on the right at 50 degrees, and a limited straight leg raise on the left at 40 degrees. (Id.) Dr. Nutter observed hip range of motion was limited due to obesity. (Id.) Dr. Nutter rated Claimant's muscle strength as 5/5 bilaterally in both upper and lower extremities, no evidence of atrophy, and well-preserved sensory modalities; Claimant was able to walk on his heels but had some difficulty due to balancing; he was able to perform tandem gait but could not squat due to back pain. (Tr. at 363-364) Dr. Nutter assessed chronic lumbar strain and diabetes. (Tr. at 364)

**The Administrative Hearing**

Medical Expert ("ME") Testimony:

The ME noted Claimant's severe impairments, notably degenerative disc disease of the lumbar spine due to a herniated disc, peripheral neuropathy as well as obesity. (Tr. at 39-40) The ME opined that Listing 1.04A had not been met or equaled; he noted there was evidence of positive straight leg raise bilaterally and painful limited motion of the lumbar spine; he did not see any evidence of objective weakness, sensation, or reflex deficits in the lower extremities. (Tr. at 40) He opined further that in combination of Claimant's significant obesity, peripheral neuropathy and lumbar spine sciatica, that Claimant would "sit solidly in a sedentary RFC for the time period under consideration." (Id.) The ME testified that based on Claimant's impairments, his pain level would be "moderate" and specified that Claimant would be limited to lifting 10 pounds occasionally and less than 10 pounds frequently. (Tr. at 42-43) Though the ME did not see any use

of a walker, cane or other ambulatory device, he testified that it would be "reasonable" if Claimant relied on an assistive device for balance. (Tr. at 43)

Claimant Testimony:

Claimant testified that he drives, but only about 5 to 10 miles a week at most. (Tr. at 46) Usually throughout the week, he rises at 6:30 in the morning, drives his two kids to the bus stop, about three-tenths of a mile, and will lay around until about 2:30 in the afternoon to pick them up at the school bus stop and then lay around until he goes to bed. (Tr. at 49-50) He does not attend to his personal hygiene as he should, does not fix simple meals, does not do light chores around the house, but passes the time watching television, goes online, reads, and listens to music. (Tr. at 50) He shops maybe once a month. (Tr. at 50-51) He gets about one to four hours of sleep a night, and does not nap during the day. (Tr. at 51)

Claimant testified that his lower back pain is what prevents him from working. (Id.) He testified that sitting or standing for 5 to 10 minutes triggers his pain and he can only walk about 20 yards. (Tr. at 52) He testified that if he over does it, which is a lot, his pain becomes more severe, and that he experiences this about 3 or 4 times a week. (Tr. at 52-53) Treatment methods for his pain, such as medication and physical therapy, did little to help his pain, but only temporary. (Tr. at 53-54) Claimant stated that he could kneel and squat, but could not get up; if he dropped the remote for the T.V., it would usually sit there until somebody came home. (Tr. at 54-55) He testified that he can take a shower by himself, but that was not very often; he also needs assistance to put on his shoes and socks at times. (Tr. at 56-57) He stated that his providers advised him to partake in exercise as much as he could, when he could. (Tr. at 58) Claimant testified that he had

been prescribed medication to assist in weight loss, which has helped with his weight at times. (Tr. at 58-59) He conceded that if he lost weight, he might not hurt as bad. (Tr. at 59)

Claimant's Wife's Testimony:

Claimant's wife testified that since Claimant was injured, they can no longer ride four-wheelers and have fished and hunted only a handful of times. (Tr. at 60-61) She testified that very seldom does she have to help Claimant get completely dressed, but most of the time she helps him put on his socks and underwear; she also helps him with bathing, but he does not shower very often. (Tr. at 61)

Vocational Expert ("VE") Testimony:

The ALJ asked the VE to assume a person of Claimant's age, education, work experience, and with the controlling RFC, *supra*, to determine if he could perform Claimant's past relevant work or other jobs. (Tr. at 62-63) In response, the VE testified that while the individual could not perform Claimant's past relevant work, the individual could perform the work of an optical assembler, grader sorter, and order clerk. (Tr. at 64) The VE also testified that the optical assembler and grader sorter were not in a factory type setting. (Tr. at 65)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

There are two relevant periods at play in this case:

In terms of his application for DIB, Claimant must show that he became disabled prior to the expiration of his insured status on December 31, 2018. The DIB program provides for payment of disability benefits to individuals who are "insured" by virtue of their contributions to the Social Security trust fund through Social Security tax on their earnings. 20 C.F.R. §§ 404.110, 404.315. To be entitled to DIB in this case, Claimant bears the burden of showing that he became disabled prior to December 31 2018, the date when his insured status expired for the purposes of DIB. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). A claimant who first satisfies the medical requirements for disability only after his date last insured will not be entitled to DIB benefits. 20 C.F.R. § 404.131(a). See also Jenkins v. Astrue, No. 3:10cv705, 2012 WL 3776370, at *3 n.6 (E.D. Va. Apr. 25, 2012) (citing Matullo v. Bowen, 926 F.2d 240, 246 (3d Cir. 1990)) (explaining that a worsened condition or a new impairment arising after the date last insured cannot be a basis for remand or an award of disability benefits). Therefore, the relevant period for purposes

14

of DIB is from May 23, 2013[3], the date of Claimant's alleged disability onset, to December 31, 2018 when his insured status expired (Tr. at 17).

In terms of his application for SSI, the relevant period is somewhat shorter, from the application filing date of February 20, 2018 through the date of the decision, October 1, 2019. (Tr. at 26); see also, 20 C.F.R. §§ 416.335, 416.340.

<u>Conflicts Between the VE Testimony and DOT:</u>

As noted *supra*, Claimant has argued that the ALJ committed reversible error by failing to reconcile the apparent conflicts between the VE's testimony and the DOT.

> The Fourth Circuit has held "Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." <u>Pearson v. Colvin</u>, 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. <u>Radford</u>, 734 F.3d at 296; see also <u>Brown v. Colvin</u>, 639 Fed. App'x. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly made clear, the ALJ must provide a sufficient explanation of his findings to allow for meaningful appellate review. See <u>Mascio</u>, 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); <u>Cook v. Heckler</u>, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding that without an adequate explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination").

See <u>Cunningham v. Berryhill</u>, No. 3:16-cv-02525, 2017 WL 1259587 (S.D.W. Va. Mar. 31, 2017) (Tinsley, M.J.). Thus, the pertinent law is clear that where there is an apparent conflict between a VE's testimony and the DOT, the adjudicator has an affirmative responsibility to ask about the conflict between the VE's testimony and the information provided in the DOT. <u>Policy Interpretation Ruling: Titles II And XVI: Use Of Vocational Expert And Vocational Specialist</u>

---

[3] Although Claimant had amended his alleged onset date to July 13, 2015 which the ALJ acknowledged during the administrative hearing (Tr. at 39), the ALJ's written decision identifies May 23, 2013 as the alleged onset date.

Evidence, And Other Reliable Occupational Information In Disability Decisions, Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *4; see also Keller v. Berryhill, 754 Fed. App'x. 193, 199 (4th Cir. 2018). It is well known that it remains the exclusive duty of the ALJ to identify any apparent conflicts in the evidence and to resolve them.

Also as noted *supra*, the burden of proof shifts to the ALJ at the fifth step of the sequential evaluation process, because "[i]n order to support a finding that you are not disabled at this fifth step . . . we are responsible for providing evidence that demonstrates that other work exists . . . that you can do, given your residual functional capacity and vocational factors." See 20 C.F.R. §§ 404.1560(c)(2) 416.960(c)(2). In determining the existence of jobs that a claimant can perform, the ALJ will consider both the DOT and a VE's testimony. See Id. §§ 404.1566, 416.966. Significantly, SSR 00-4p expressly allows the ALJ to rely upon a VE's "experience in job placement or career counseling" among reasonable bases for relying on the evidence from the VE rather than the DOT. See SSR 00-4p, 2000 WL 1898704, at *2.

As an initial matter, Claimant does not allege that there is a conflict with the "order clerk" job and the DOT vis-à-vis the RFC's restrictions concerning moving machinery. Indeed, with this particular occupation, an individual is not exposed to vibration, moving mechanical parts, electric shock, high exposed places, radiation, explosives, toxic caustic chemicals, or other environmental conditions. See DICOT 209.567-014 (G.P.O.), 1991 WL 671794. Clearly, this job does not conflict with the controlling RFC. It is notable that the Regulations specifically provide:

> We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether –
> (1)  Work exists in the immediate area in which you live;
> (2)  A specific job vacancy exists for you; or
> (3)  You would be hired if you applied for work.

See 20 C.F.R. §§ 404.1566(a)(1)-(3), 416.966(a)(1)-(3). Additionally, "[w]ork exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." See Id. §§404.1566(b), 416.966(b) (emphasis added). Given that Claimant points to no evidence that suggests a conflict with the "order clerk" job, it is at least "one" occupation the VE identified that he could perform, therefore, the ALJ satisfied his burden at the fifth step.

Nevertheless, returning to the jobs identified by the VE where the DOT/SCO descriptions for the two jobs that Claimant contends have "apparent" conflicts with the controlling RFC, because they expose an individual to moving machinery and hazards as they are in factory settings, it is noted that the "optical assembler" job provides that the following activities or conditions do not exist and/or to which the individual is exposed: weather; extreme cold; extreme heat; wet and/or humid; vibration; atmospheric conditions; *moving mechanical parts*; electric shock; high exposed places; radiation; explosives; toxic caustic chemicals; or other environmental conditions. See DICOT 713.687-018 (G.P.O.), 1991 WL 679271 (emphasis added). The "grader/sorter" job also does not expose the individual to any such activities or conditions: See DICOT 521.687-086-014 (G.P.O.), 1991 WL 674226. Therefore, to the extent that Claimant contends there were apparent conflicts between these remaining jobs and the DOT, or that the VE's testimony did not comport with the ALJ's hypothetical, these job descriptions do not suggest such conflicts are present here, notwithstanding the nature of the occupational setting, whether it is in a factory, industrial, or otherwise.

Regarding Claimant's other argument, that the ALJ failed to inquire of the VE whether his testimony was consistent with the DOT, in contravention with SSR 00-4p's requirement that

adjudicators inquire on the record of any conflicts, there is no dispute that the ALJ did not ask whether there were any conflicts between the VE's testimony and the DOT. However, this Court has in the past determined that where an ALJ fails to ask about a conflict, and none exist, such an error was harmless. See Critchley v. Colvin, No. 5:15-cv-8288, 2016 WL 3030211, at *7-8 (S.D.W. Va. May 4, 2016) (Eifert, M.J.), *report and recommendation adopted by*, 2016 WL 3033763 (S.D.W. Va. May 26, 2016) (citing Walls v. Astrue, No. 2:09-cv-1006, 2010 WL 5672742, at *4 (S.D.W. Va. Dec. 20, 2010), *report and recommendation adopted by* 2011 WL 322645 (S.D.W. Va. Jan. 31, 2011); see also Williams v. Colvin, No. 5:15-cv-60, 2016 WL 1276415, at *5 (E.D.N.C. Mar. 30, 2016) (finding ALJ's failure to question vocational expert about potential conflicts was harmless error where no actual conflict existed and collecting cases to support)). While the ALJ did not explicitly inquire of the VE whether his testimony conflicted with the DOT, from the undersigned's review of the DOT and the controlling RFC, there are no conflicts, and certainly no conflicts to the extent Claimant has alleged with respect to the "order clerk" job. Ultimately, the ALJ determined that pursuant to SSR 00-4p, the VE's testimony was consistent with the DOT. (Tr. at 26)

Accordingly, under the circumstances presented in this case, the undersigned **FINDS** the ALJ's failure to ask the VE if his testimony conflicted with the DOT does not rise to reversible error. The undersigned further **FINDS** that the ALJ discharged his duty at the fifth step determination in determining there were other jobs Claimant can perform during the relevant periods.

The RFC Assessment and SSR 96-9p:

Claimant has alleged that the RFC assessment is flawed because the ALJ "does not specify

what is meant by balancing, as cautioned in SSR 96-9[p]". (ECF No. 15 at 15)

A claimant's RFC represents the *most* that the individual can do despite her limitations or restrictions. See SSR 96-8p, 1996 WL 3744184, at \*1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. Id. §§ 404.1546(c), 416.946(c).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted); see also Felton-Miller, 459 F. at 231.

To the extent that Claimant is arguing that the RFC assessment is not supported by substantial evidence, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)). Instead, an ALJ " 'must build an accurate and logical bridge from the evidence to his conclusion.' " Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). In this case, the ALJ provided a comprehensive review of the record evidence, which included Claimant's testimony and subjective statements, his daily activities, the objective medical findings, the treatment history, and the medical opinion evidence (Tr. at 20-24).

The ALJ expressly mentioned Claimant's alleged functional limitations included impairments in his ability to remember and complete tasks (Tr. at 20); the ALJ also noted his allegation that he needs a walker or cane to ambulate (Tr. at 22).

As noted by the parties, SSR 96-9p provides that where an RFC assessment allows for "limited balancing", an explanation is necessary in order to determine the remaining occupational base (ECF No. 15 at 15; ECF No. 17 at 13):

> **Postural limitations:** Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. In the SCO, "balancing" means maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces. If an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base. However, if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base. Consultation with a vocational resource may be appropriate in some cases.

See, SSR 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to do Other Work--Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, 1996 WL 374185, at *7 (**bold** in original).

While there is no dispute that the ALJ precluded all balancing in the RFC assessment, Claimant nevertheless asserts that further explanation for what is meant by "never balance", because the ALJ did not specify whether he meant the SCO definition of balance, *supra*, or Claimant's ability to walk or stand on level terrain.[4] The ALJ acknowledged the ME's testimony

---

[4] There is no dispute that none of the jobs identified by the VE in response to the ALJ's controlling hypothetical require balancing.

that although Claimant's use of an ambulatory device would be "reasonable", the ME did not opine that "it was, in fact, required." (Tr. at 22) The ALJ noted there is a prescription for a walker in the record, but observed that the recommendation for this device was not made by Claimant's care provider "directly. Instead, the prescription was given following the claimant's assertion that a 'social security physician' recommended use." (Tr. at 22, 442, 447) Significantly, the ALJ also noted that both medical consultative examination reports "state that the claimant did not require any ambulatory aids." (Tr. at 22, 356, 362) SSR 96-9p also provides the following regarding ambulatory aids:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

See 1996 WL 374185, at *7 (**bold** in original) (*italics* added).

Earlier in the written decision, the ALJ determined that Claimant's spine condition failed to meet the requirements under Listing 1.04, explicitly noting that the evidence did not demonstrate limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and positive straight leg raising test (sitting and supine) or any evidence of lumbar spinal stenosis resulting in an inability to ambulate effectively. (Tr. at 18) Later in the written decision, the ALJ acknowledged Claimant asserted the need for a walker and/or a cane (Tr. at 22), but noted that neither the medical consultative examiners nor the ME opined such a device was medically required, *supra*. Significantly, the ALJ recognized that

physical examinations within the treatment records have at times noted lumbar and hip tenderness on palpation, lumbosacral muscle spasms, positive straight leg raising, pain with lumbar range of motion, positive facet loading, sacroiliac tenderness, weakness, and abnormal gait; however, on numerous occasions, they have also demonstrated normal appearance of the spine, no scoliosis, normal range of motion, normal gait and stance, normal motor strength, no sacroiliac tenderness, no extremity weakness, no acute distress, and normal overall musculoskeletal findings.

(Tr. at 20-21, 433, 439, 446, 480-481, 489, 498, 505, 511, 520, 529, 539, 546, 555, 561, 567-568, 575, 584, 594, 602, 612, 620, 634, 643, 807-808, 817, 827, 836, 845, 854, 862, 871, 879-881, 897, 905, 913, 921, 930, 938, 948, 954, 957, 961, 964, 968, 971, 1006) Additionally, the ALJ noted that imaging reports revealed findings that were either mild or within normal limits. (Tr. at 20, 24, 449-450, 451, 453-454, 744-748, 999-1000)

The ALJ's discussion of the evidence concerning Claimant's treatment modalities is illuminating as well: opioid pain medications, anti-inflammatories, and muscle relaxers; physical therapy; and steroid injection. (Tr. at 21) The ALJ noted that Claimant's symptoms were improved by medication and that recent records included Claimant's reports that his physical and overall functioning have improved and that he had no side effects from medications; further, Claimant reported that his pain worsened with prolonged standing and walking, and was relieved by sitting and extension. (Id.) The ALJ also noted Claimant testified that he "currently declines treatment with steroid injections, despite recommendations for such, "because he believes they will not work and will lead to a worsening of his condition." (Tr. at 21-22, 485, 575, 665, 813, 847, 954-955, 976, 1003) The ALJ considered physical therapy records from August 2017 which indicated no functional deficits in self-care, changing and maintaining body positions, mobility, or carrying, moving, and handling objects, though limitations were observed in Claimant's ability to bend, maintain sitting and standing body positions, and prolonged walking; the ALJ noted that while the

treatment records showed Claimant reported no benefits from physical therapy, Claimant also reported to have made 95% progress on his short term goal and 90% progress on his long term goal, and exhibited no lower extremity symptoms. (Tr. at 22, 387-390, 516) It was noted that Claimant was recently once again referred to physical therapy. (Tr. at 22, 951, 1007)

In addition to the fact there are no medical treatment notes in the record that indicate Claimant's walker or cane was medically required as defined by the SSA, they also suggest that Claimant did not have significant issues related to balancing. Regardless, it is important to appreciate this Circuit's recognition that hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). As discussed *infra*, the ALJ evaluated the evidence with respect to Claimant's allegation that he was totally disabled by his physical impairments, and found them to be inconsistent with the overall record. Thus, to the extent Claimant contends otherwise, the ALJ did not err by omitting Claimant's use of a walker and/or cane in the RFC assessment.

The ALJ explicitly noted that the VE testified that an individual with Claimant's vocational background, age, and education and limited to sedentary work with the aforementioned postural and environmental restrictions could still perform other jobs in the national economy. (Tr. at 25-26) It is also clear that the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 Fed. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). Moreover, under the current Regulations, the ALJ had no duty to defer or give any specific evidentiary weight to any medical opinion, including any provided by the ME. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Therefore, to the extent Claimant argues that the ALJ's

RFC assessment should be bound to the ME's opinion that Claimant's walker use was "reasonable" for "balance", this argument lacks merit. Additionally, because the ALJ omitted balancing altogether in the RFC, the ALJ was under no duty to define "never balance". Finally, to the extent Claimant argues that his walker/cane use would preclude all work, Claimant's contention is akin to a request that this Court should re-weigh the evidence, however, any conflicts within the evidence of record, as stated *supra*, is for the ALJ to resolve, not this Court. See also, SSR 96-8p, 1996 WL 3741784, at *7.

Because the ALJ is only required to incorporate those limitations established by the record, the undersigned **FINDS** the ALJ's RFC assessment is supported by substantial evidence.

Evaluation of Symptoms in Disability Claims:

Claimant has also argued that the ALJ did not abide by SSR 16-3p because the RFC fails to accommodate his moderate pain (ECF No. 15 at 17-20).

SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. §§ 404.1529, 416.929 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be

evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ thoroughly reviewed Claimant's alleged conditions and impairments, and how they impacted his ability to function throughout the written decision. Of interest here, the ALJ recognized Claimant's statements made during the hearing, in his applications for benefits, as well as in his representative's brief, that his impairments "limit his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb, remember, and complete tasks; and cause chronic pain." (Tr. at 20, 240-244, 245-252, 295-304)

Next, following his review of the objective medical evidence of record, the ALJ performed the requisite credibility/consistency analysis endorsed by Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1995). (Tr. at 20-23) As noted by Claimant, the ALJ determined that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not supported by the record of evidence and highlighted the aspects that undercut his allegations of totally disabling symptoms. (Tr. at 23) While the ALJ acknowledged Claimant had chronic pain as well as other impairments that would negatively impact his functioning, the ALJ also noted that Claimant's allegations were not consistent with treatment note reports of his daily activities:

> the claimant reports that he is unable to perform light chores or most physical activity; however, treatment notes indicate that the claimant walks with his children, has performed weedeating, and has assisted his dad with laborious work. The undersigned notes that the claimant has reported increased pain after some of these activities; however, their exertional level is well beyond the limitations alleged by the claimant.

(Tr. at 23, 961, 968, 974)[5] Additionally, as noted *supra*, the ALJ noted that Claimant's alleged need for a walker or cane was not medically required, and that the "use of such a device is not noted within any of the remaining treatment records." (Tr. at 22, 356, 362, 442, 447) Ultimately,

---

[5] The ALJ referenced physical therapy treatment notes from May, June, and August 2019.

the ALJ found "that the symptoms and limitations alleged by the claimant were not fully supported by the objective evidence and his overall conservative treatment history" and despite his alleged "inability to work due to his severe impairments, any limitations thereof have been adequately assessed in the [RFC] above." (Tr. at 23) Significantly, while the ALJ found the ME's opinion that Claimant would be limited to less than the full range of sedentary work persuasive, the ALJ further accommodated Claimant, as he found "that the effects of the claimant's chronic pain would cause additional limitations of the claimant's ability to maintain concentration on a sustained basis."[6] (Id.)

In Hines v. Barnhart, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing Craig v. Chater, 76 F.3d at 595).

Recently, the Fourth Circuit emphasized the adjudicator's role in evaluating subjective symptoms: "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the

---

[6]  See  https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010  (last  visited  June  4,  2021),  POMS  DI 25020.010(B)(3)(d) (Under the heading "Mental Abilities Critical for Performing Unskilled Work" Claimant must demonstrate the ability to "maintain attention for extended periods of 2-hour segments (concentration is not critical)."

severity, persistence, and limiting effects of their symptoms." <u>Id</u>. It is important to recognize that in <u>Arakas</u>, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. <u>Id</u>. Another significant, if not critical, aspect of the <u>Arakas</u> holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. <u>Id</u>. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting Claimant's complaints.

The foregoing demonstrates that the ALJ in this case did not overinflate Claimant's capabilities while ignoring the evidence tending to support his allegations of functional limitations; the ALJ herein did not make factual misrepresentations or misinterpretations of the evidence of record in order to make a nondisability finding. Indeed, given the conflicting evidence consisting of Claimant's allegations of pain and other symptoms with the objective and other evidence of record, the ALJ is solely responsible for resolving the conflict; the issue before the Court is not whether Claimant is disabled, but whether the ALJ's finding is supported by substantial evidence and was reached based upon a correct application of the relevant law. See <u>Craig v. Chater</u>, 76 F.3d at 589. In this case, it appears that the ALJ paid close attention to the objective medical evidence from the relevant period, which included Claimant's reports concerning his pain and other symptoms, or lack thereof, as well as what helped his pain and other symptoms, and what did not relieve them; the ALJ then compared this evidence to Claimant's current allegations of pain and

other alleged symptomology.[7]

In short, the ALJ's discussion involved a thorough review of the conflicting medical and other evidence requiring some reconciliation.[8] Accordingly, the undersigned **FINDS** that Claimant's contention that the ALJ did not comply with SSR 16-3p lacks merit, the undersigned further **FINDS** that the ALJ's assessment of Claimant's subjective complaints is supported by the substantial evidence.

The ALJ's narrative of the record included the objective medical evidence, such as imaging and examination findings, as well as the other evidence of record, including Claimant's own statements and testimony; the ALJ's thorough discussion of all this evidence, and the ultimate determination that Claimant remained capable of performing less than a full range of sedentary work provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is not necessary. Id. at 637.

Accordingly, the undersigned further **FINDS** that the ALJ's analysis of the evidence of record, and the final decision denying Claimant's applications for benefits are supported by the substantial evidence.

---

[7] On judicial review, the Commissioner's factual findings are " 'conclusive' if supported by 'substantial evidence.' " See Biestek v. Berryhill, 139 S.Ct. 1148, 1153 (2019). Given that substantial evidence is "more than a mere scintilla" and "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154 (internal quotation omitted).

[8] Again, as provided *supra*, though Claimant may disagree with the ALJ's determination that she could perform light exertional work with certain limitations, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. See SSR 96-8p, 1996 WL 3741784, at *7.

**Recommendations for Disposition**

      For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for reversal or remand (ECF No. 15), **GRANT** the Defendant's request to affirm the decision below (ECF No. 17), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

      The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

      Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of

such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: June 10, 2021.



Omar J. Aboulhosn
United States Magistrate Judge

31